# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| TERRY ROUSE,<br><br>Plaintiff,<br><br>v.<br><br>SGT. STARKS, et al.,<br><br>Defendants. | Civil Action No. 16-3422(MCA)<br><br><br>OPINION |

## I. INTRODUCTION

This matter has been opened to the Court by Plaintiff's filing of a Complaint ("Original Complaint") (ECF No. 1), and a motion to amend his Complaint to add additional claims and Defendants ("Amended Complaint"). (ECF No. 21, 21-1.) The Court has screened the Original Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and will proceed the Original Complaint in part and dismiss it in part as described in this Opinion. The Court finds, however, that Plaintiff's Amended Complaint is not properly joined with the Original Complaint, and will therefore dismiss the Amended Complaint without prejudice to Plaintiff's filing of a new action or actions.

## II. FACTUAL BACKGROUND

### a. Plaintiff's Original Complaint

In his original Complaint, Plaintiff alleges that Defendant Sgt. Starks, a corrections officer at Northern State Prison, harassed Plaintiff about his religious beliefs while Plaintiff was on his way to religious services. Plaintiff is a Seventh Day Adventist. (ECF No. 1, Original Complaint at 2.) After searching Plaintiff's bible, Sgt. Starks asked why Plaintiff was paying tithes to a god that does not exist. Plaintiff informed Sgt. Starks that he was making 58 cents an hour at the sewing shop, and Sgt. Starks continued to harass Plaintiff and "cursed" Plaintiff's

1

god. (*Id.*) The same week, Plaintiff was fired from his job for allegedly stealing pants. Plaintiff, however, worked in the sheet section of the sewing shop. According to Plaintiff, three inmates were fired for the theft of two pairs of pants. (*Id.* at 2.) The Complaint initially implies that Sgt. Starks was involved in Plaintiff's firing; later in the Complaint, Plaintiff directly asserts that Sgt. Starks had Plaintiff fired. (*Id.* at 5.)

Subsequently, in March 2016, Plaintiff was working as a volunteer at the chapel and was searched because an inmate had passed him a piece of paper with commissary items written on it. Plaintiff had his own prescribed medication in his pocket and had two pills in his pocket at the time of the search. Plaintiff was strip searched with another inmate and nothing was found on them. The other inmate was released, but Plaintiff was kept in handcuffs and was interrogated by Officers Blackwell and Sanchez, and Sgt. Starks. Sgt. Starks wanted Plaintiff to provide "some type of information," which Plaintiff did either did not have or would not provide. Sgt. Starks told Plaintiff he was going to "lock up" and claimed that he found pills wrapped in plastic in the strip search room after Plaintiff left. Sgt. Starks allegedly told Plaintiff: "Your god cannot help you now, and he did not help you when you lost your job." (*Id.* at 2.)

Plaintiff was taken to the suicide unit. Although Plaintiff was interviewed and cleared from being suicidal, Sgt. Starks had him placed in a "dry cell" for three days. Plaintiff had no clothes other than a "suicide gown", "no mattress, . . . no tissue[s], no spoon, or cosmetics." He was forced to sleep on a steel frame bunk and had to eat with his hands and could not use the toilet until tissue was brought to him. Sgt. Starks informed Plaintiff that he would remain in these conditions until he gave Sgt. Starks the information he wanted. (*Id.* at 3.) Plaintiff alleges that state regulations require that prison officials provide him with a foam mattress, a suicide blanket, spoon, cup, soap, toothpaste, and anti-shank toothbrush, and that none of these items

2

were provided to him. Plaintiff further alleges that when investigators come to the facility, the staff is alerted and directed to provide the items. (*Id.* at 3.) Later in the Complaint, Plaintiff alleges that Major Crone is responsible for compound operations and that Major Crone alerts the staff regarding inspections, at which time the staff places the required items in prisoners' cells on the suicide unit. (*Id.* at 6.)

Plaintiff has also sued Associate Administrator Cindy Sweeney, stating that she should have been aware of Sgt. Starks' misconduct from his "file" and his prior history of misconduct and should have prevented the conditions Plaintiff experienced in the suicide unit. (*Id.* at 3, 6.)

Finally, Plaintiff has sued Officer L. Little who is a corrections officer at Northern State Prison and is friendly with Sgt. Starks. When Plaintiff was released from the suicide unit, Sgt. Starks harassed Plaintiff at breakfast and asked him if he was going to "lie" and say that Sgt. Starks set Plaintiff up. He also told Plaintiff that no one would believe Plaintiff because Starks has "friends in blue" all around him. (*Id.* at 4.) Sgt. Starks then went over to Officer Little and began talking to her about Plaintiff. (*Id.*) It appears that Plaintiff subsequently filed a grievance regarding Sgt. Starks, and that Officer Little made "nasty comments" to Plaintiff and called him "a coward" for reporting Sgt. Starks. (*Id.* at 4.) Plaintiff subsequently informed Officer Little, who is responsible for payroll, that his payroll had not been processed, and Little told him she would check with business office, but did not submit a supplemental payroll for Plaintiff. Plaintiff submitted a grievance about his payroll and the funds were put into his account. (*Id.*) Plaintiff alleges that Officer Little assisted another inmate in getting his payroll and has showed favoritism toward certain inmates. Later in the Complaint, Plaintiff alleges that Officer Little retaliated against him for reporting Sgt. Starks' misconduct by not putting Plaintiff on the payroll. (*Id.* at 6.)

3

### b. Plaintiff's Supplemental Complaint

On November 28, 2017, Plaintiff filed a motion to "amend" his complaint and has attached an Amended Complaint, which adds new Defendants and facts that are unrelated to the claims in his Original Complaint. (*See* ECF No. 21-1.)

In his Amended Complaint, Plaintiff alleges that he has been denied visitation with his children by the social service department at Northern State Prison. He alleges that Ms. Modlin, Mr. McClinton, and their supervisor Ms. Clyburn would not approve his visits with his children. (ECF No. 21-1, at 2.)

Plaintiff also attempts to bring a claim for denial of adequate medical care, alleging that on March 6, 2016, Dr. Salem took away Plaintiff's "keep on person" medication due to alleged abuse of his medication despite any proof of such abuse. Plaintiff alleges that he has been shot twice and has a bullet lodged in his left foot. The medications at issue are Naproxen and Neurontin. Plaintiff wrote to Ms. Bridget Hogan of the medical department and Dr. Harold Goldstein of the Psychology Department regarding the issue, and both told him he would be interviewed by mental health staff. Dr. Klansky, a mental health staff member, upheld the restriction by Dr. Salem. Due the restrictions, Plaintiff experiences significant pain in the mornings; Plaintiff also alleges that he now requires ankle and knee braces for support and has difficulty walking. (*Id.* at 2-3.)

Plaintiff also alleges that his law library access is being "censored", which has impeded his ability to work on pending *pro se* appeals. (*Id.* at 4.) He alleges that he has sent grievances about the law library access, medical care, and denial of visits with his children to Governor

Christie, Majority Leader Bonnie Watson-Coleman, Commissioner of Corrections Gary Lanigan, and Northern State Prison Administrator George O. Robinson, as well as to this Court. (*Id.*)

Plaintiff also alleges that he is now in Administrative Segregation ("Ad Seg") because another prisoner attacked him in his cell while attempting to plant controlled substances in Plaintiff's cell. The prisoner claimed that a unit officer, Mrs. Griffen, paid the prisoner to toss the item containing a controlled substance into Plaintiff's cell. Officer Jaber then falsely stated that Plaintiff and the other prisoner exchanged blows, and Plaintiff's cell was sprayed with pepper spray. Officer Gonzalez did a cell search and found the item in question and Plaintiff now has very limited law library access. Plaintiff appears to allege that he was found guilty of infractions in a disciplinary proceeding by Hearing Officer Jantz even though there was no video footage of the incident. (*Id.* at 5-6.)

## III. STANDARD OF REVIEW

Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B).[1] Here, the Court previously granted Plaintiff's

---

[1] Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

application to proceed *in forma pauperis*, and Plaintiff's Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B).

IV. **ANALYSIS**

   a. **Original Complaint**

The Court begins with Plaintiff's Original Complaint. The Court construes Plaintiff to raise claims for First Amendment retaliation against Sgt. Starks and Officer Little, Eighth Amendment Claims regarding his conditions of confinement against Major Crone, and supervisory liability claims against Associate Administrator Cindy Sweeney based on her failure to prevent the violations of his constitutional rights. At this early stage, the Court will proceed the First Amendment retaliation claims against Sgt. Starks and Officer Little, and will also proceed the Eighth Amendment claims against Defendant Crone and Sgt. Starks premised on the conditions of confinement in the suicide unit.

It also appears from his Complaint that Plaintiff has sued Defendants in their official and personal capacities. As such, the Court will dismiss <u>with prejudice</u> the official capacity claims for damages against the individual Defendants because a suit against a state official named in his official capacity is a suit against the entity he represents, *see Hafer v. Melo*, 502 U.S. 21, 27 (1991), and States and governmental entities are considered "arms of the State" and are not "persons" within the meaning of § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 68-70 (1989).

The Court will also dismiss without prejudice the supervisory claims against Defendant Sweeney, as *respondeat superior* is not a basis for liability under § 1983, Plaintiff has not provided sufficient facts to suggest that this Defendant is liable as a supervisor. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Thus, a section 1983 plaintiff must allege that each defendant was personally involved in the events constituting the plaintiff's claim. *See Innis v. Wilson*, 334 F. App'x 454, 457 (3d Cir. 2009) (indicating that section 1983 plaintiff could not maintain claim against individual defendant unless said defendant was personally involved in actions causing the claim); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (stating that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*"). Here, Plaintiff vaguely alludes to Defendant's Sweeny's knowledge of Sgt. Starks' "file" and asserts that she should have prevented or remedied the conditions in the suicide unit. These conclusory allegations are insufficient to suggest that Defendant Sweeney is liable as a supervisor. To state a claim for supervisory liability against Defendant Sweeney, Plaintiff must allege that she either participated in the constitutional violation or that her deficient policies, training, and/or supervision caused the harm at issue. *See Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316-19 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042, 2043 (2015).[2]

---

[2] In *Barkes*, the Third Circuit outlined "two general ways" in which a supervisor-defendant may liable under the Eighth Amendment: (1) where the supervisor established a policy, custom, or practice that caused the harm; or (2) where the supervisor personally participated in the constitutional violation:

> [f]irst, liability may attach if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and

### b. Motion to Amend

The Court next addresses Plaintiff's motion to amend his Complaint. Viewing Plaintiff's motion to amend liberally, it appears that Plaintiff seeks to supplement, rather than replace, his original pleading. Because the Amended Complaint raises entirely new claims against new Defendants, the Court finds that it is improperly joined to the current action. As such, the Court will dismiss the Amended Complaint <u>without prejudice</u> to Plaintiff's filing of a new action or actions with respect to the claims raised in his Amended Complaint.

The Federal Rules set out the standards for joining claims and parties. Rule 18(a) controls the joinder of claims. In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party." Rule 20(a)(2) controls the permissive joinder of defendants in *pro se* prisoner actions as well as other civil actions. "Persons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; <u>and</u> (B) any question of law or fact common to all defendants will arise in the action." (emphasis added). *See, e.g., Pruden v. SCI Camp Hill*, 252 F. App'x. 436 (3d Cir. 2007); *George v. Smith*, 507 F.3d 605 (7th Cir. 2007). In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

---

*Id.* at 316-19.
    acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995)). "Failure to" claims – failure to train, failure to discipline, or, as in the case here, failure to supervise – are generally considered a subcategory of policy or practice liability.

8

Despite the broad language of rule 18(a), plaintiff may join multiple defendants in a single action <u>only if</u> plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all. If the requirements for joinder of parties have been satisfied, however, Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions. *Williams v. Hebbon*, No. CIV.A. 09-2103 AET, 2011 WL 1930564, at *5 (D.N.J. May 19, 2011) (citing 7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 1655 (3d ed. 2009)). The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy. *Id.* (citing *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002)). However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit. *See, e.g., Pruden v. SCI Camp Hill*, 252 F. App'x. 436 (3d Cir.2007); *George v. Smith*, 507 F.3d 605 (7th Cir. 2007).

Here, the claims in the proposed Amended Complaint involve new Defendants and appear <u>wholly unrelated</u> to the claims in the Original Complaint, which asserts § 1983 claims for retaliation and conditions of confinement. The claims in the Amended Complaint do not arise from the same transaction or occurrence as those in the Original Complaint and involve (1) denial of visitation with Plaintiff's children, (2) denial of medical care, (3) denial of law library access, (4) allegedly false disciplinary proceedings. These allegations, which also appear unrelated to one another, involve <u>none</u> of the same Defendants sued in the Original Complaint. Because claims and Defendants in the proposed Amended Complaint are not properly joined to this action, the Court will dismiss the Amended Complaint <u>without prejudice</u> to Plaintiff's filing

of these claims in a new action or actions. The Court notes that Plaintiff may not join unrelated claims and defendants in a single lawsuit, and any new action(s) filed by Plaintiff must comply with the rules governing joinder and be accompanied by either the filing fee or a new application to proceed *in forma pauperis*.[3]

### c. Plaintiff's Letters and other Filings

The Court also declines to construe Plaintiff's letters to the court as additional supplements to his Original Complaint. Plaintiff apparently believes that he is free to submit additional information to the Court regarding his claims in the form of letters; however, any attempt to amend or supplement his Complaint must conform to Federal Rule of Civil Procedure 15, and an amended complaint, once accepted by the Court, replaces the original complaint and renders it inoperative.

## V. **CONCLUSION**

With respect to the Original Complaint (ECF No. 1), the Court will proceed the First Amendment retaliation claims against Sgt. Starks and Officer Little. The Court will also proceed the Eighth Amendment claims against Defendant Crone and Sgt. Starks premised on Plaintiff's conditions of confinement in the suicide unit. The Court will dismiss <u>with prejudice</u> the official capacity claims for damages against all Defendants, and will also dismiss <u>without prejudice</u> the supervisory claims against Defendant Sweeney for failure to state a claim for relief. Because the Court finds that the claims in the proposed Amended Complaint are not properly joined with this

---

[3] Because the Court finds that Plaintiff's Amended Complaint is not properly joined with the Original Complaint, it need not reach the issues of whether the claims in the Amended Complaint are properly joined in a single action or whether Plaintiff states any claims for relief. If Plaintiff files a new action or actions and either pays the filing fee or submits a complete application to proceed *in forma pauperis*, the Court will screen the claims for dismissal at that time.

10

action, the Court will dismiss the Amended Complaint without prejudice to Plaintiff's filing of a new action or actions that comply with the joinder rules. The Court declines to construe Plaintiff's additional filings as supplements to his Complaint, and any attempts by Plaintiff to amend or supplement his Complaint must conform to the Federal Rules. An appropriate Order follows.

_____
Madeline Cox Arleo, District Judge
United States District Court